**In the Matter of APEX CARPET FINISHERS, INC., Bankrupt.**

**TEXTILE RUBBER & CHEMICAL COMPANY, INC., Appellant,**

v.

**JAMES TALCOTT, INC., Appellee.**

No. 78–1132

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1978.

Edward Hine, Jr., Rome, Ga., for appellant.

Johnson, Harper, Ward & Stanfield, James A. Stanfield, W. Davis Hewitt, Atlanta, Ga., for appellee.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant Textile Rubber & Chemical Company, Inc., appealed to the district court from an adverse order of the bankruptcy judge in which the bankruptcy judge declined to modify an order previously entered by him. The district judge affirmed the refusal to modify. Textile Rubber appeals to this court, and we reverse.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Apex Carpet Finishers, Inc., was in Chapter XI in the bankruptcy court for the Northern District of Georgia. It owned three parcels of real estate, located in Georgia. Parcels I and II were encumbered by a first mortgage to Rossville Federal Savings & Loan Association in excess of $600,000, a second mortgage to Textile Rubber & Chemical Company in excess of $644,000, and a third mortgage to James Talcott, Inc., in excess of $300,000. Talcott's mortgage also covered Parcel III, in which Textile Rubber had no security interest and on which Talcott was therefore second mortgagee.

In August 1975 Textile Rubber filed a petition with the bankruptcy court asking that an existent stay be lifted and that it be permitted to institute foreclosure proceedings on its second mortgage on Parcels I and II, to take possession from Apex, and to assert and prosecute any deficiencies arising from foreclosure. Textile Rubber alleged on information and belief that Apex had granted a security interest in the property subsequent to and junior to the mortgage to Textile Rubber.

Notice of the Textile Rubber petition was given, including notice to Talcott. The hearing was held before the bankruptcy judge. Talcott did not attend because it considered that its security interest in Parcels I and II would be eliminated by Textile Rubber's reclamation. Apex and the Creditors' Committee ascertained that Parcels I and II had a value not in excess of $200,000, so that no equity was available for Apex or unsecured creditors. At the hearing the Creditors' Committee insisted that as a condition to Textile Rubber's being permitted to reclaim it be precluded from asserting any unsecured claims. Counsel for Apex suggested that it would be simpler and less expensive to the debtor estate if Textile Rubber accepted a deed in lieu of foreclosure. Textile Rubber agreed. The bankruptcy judge entered an order on October 30, 1975, which directed that Textile Rubber file no claim as an unsecured creditor, and then stated:

Upon consideration of the foregoing facts and the representations by the attorney for Textile Rubber and Chemical Company, Inc., Apex Carpet Finishers, Inc. and the Official Creditors' Committee and upon the record as a whole, it is hereby ORDERED, ADJUDGED AND DECREED that the stay of this Court is lifted as to Textile Rubber and Chemical Company, Inc., which company is hereby allowed to reclaim the property in which it holds a security interest, and that Apex Carpet Finishers, Inc. deliver possession of said property to the said complainant. Apex Carpet Finishers, Inc. is further authorized to execute and deliver to the complainant appropriate conveyances of said property by deed and/or bill of sale. The cost of this cause shall be borne by Textile Rubber and Chemical Company, Inc. Apex delivered a deed in lieu of foreclosure as authorized and directed, containing this provision:

> In consideration of one ($1.00) dollar and other valuable considerations paid, the receipt of all of which is hereby acknowledge [sic] and the cancellation, satisfaction and release of the unpaid balance, together with all accrued interest thereon of an indebtedness of Six Hundred Sixty Thousand Four Hundred Fifty-Nine and 56/100 ($660,-459.56) Dollars, and in accordance with the Order of Judge William L. Norton, Jr., Bankruptcy Judge for the United States District Court for the Northern District of Georgia, Rome Division, dated October 30, 1975;

Textile Rubber was given possession. It leased the property back to Apex under a lease-purchase agreement providing for a rent of $17,035.32 per month for 52 months, with an option to purchase for $1. Textile Rubber did not satisfy its mortgage of record but recorded the deed in lieu of foreclosure.

Subsequently Talcott asked the bankruptcy court for permission to reclaim its security interest in Parcels I and II and for possession.[1] Also Talcott demanded from Textile Rubber an assignment of rents on

---

1. Talcott accepted a deed in lieu of foreclosure based on its security interest in Parcel III.

Parcels I and II. This precipitated the matter now before the court. Textile Rubber moved to modify the October 30, 1975, order and asked leave to begin foreclosure proceedings on Parcels I and II. After a hearing with oral testimony, the bankruptcy judge denied Textile Rubber's petition. He construed the order as permitting Textile Rubber to either foreclose on the property or receive a deed in lieu of foreclosure. He accepted the argument of Talcott that when Textile Rubber accepted the deed in lieu of foreclosure Textile Rubber's interest under the uncancelled second mortgage merged by operation of law into the fee acquired by deed, with the result that Talcott became the second mortgagee on tracts I and II. The bankruptcy judge relied heavily upon the recital in the deed in lieu of foreclosure concerning the cancellation of indebtedness to Textile Rubber.

The bankruptcy judge explored at length Georgia's statutory and case law concerning the doctrine of merger. It is not necessary for us to explore that tangled path. The bankruptcy judge, and the district judge on appeal, approached the matter as though it were a problem in conveyancing in an arm's length business transaction between private parties. This transaction was done with the consent of, and under the eye of, the bankruptcy court. The release provision in the deed was included because the court required that Textile Rubber agree to give up any unsecured claims it might have by reason of the property's being of less value than the debt. The expedient of a deed in lieu of foreclosure was utilized at the suggestion of the debtor and for the purpose of saving expense to the debtor's estate. The clear intention of all parties participating in the hearing was to permit Textile Rubber to exercise its rights as second mortgagee in a manner that would benefit the estate. Possibly no one at the hearing specifically directed attention to the effect upon Textile Rubber's rights, but we know that Talcott expected Textile Rubber to maintain its superior position over junior security holders; indeed this was the reason Talcott did not come to the hearing. Part of the relief prayed for by Textile Rubber in its petition to the bankruptcy court was to be put in possession. Under the bankruptcy court's refusal to modify its order Textile Rubber ended up having lost this important and valuable right to possession. Talcott concedes that the windfall to which it has fallen heir by the doctrine of merger could have been prevented by the addition of a sentence or two in the deed. The use of such language was authorized by the order of the court, and the insertion of such language could not have been effectively opposed by anyone interested.

The bankruptcy court has both the power and the duty to enter corrective orders protecting Textile Rubber from a tremendous loss suffered unintentionally through a technical rule of conveyancing and in a transaction done as an accommodation to the debtor estate. *In re Meter Maid Indus., Inc.,* 462 F.2d 436, 439 (CA5, 1972); *Mavity v. Associates Discount Corp.,* 320 F.2d 133, 136 (CA5, 1963), *cert. denied,* 376 U.S. 920, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964). It should do so in this situation by permitting Textile Rubber to foreclosure as prayed or directing the delivery of a corrected deed in lieu of foreclosure containing appropriate protective language.

REVERSED and REMANDED to the district court with directions to reverse the decision of the bankruptcy court and remand with instructions to enter judgment not inconsistent with this opinion.